IN RE:

Amanda Lynne Jackson,　　　　　　　　　　　　　Case No. 09-63379-wsd
　　　　　　　　　　　　　　　　　　　　　　　　Chapter 7
　　　　　　Debtor.　　　　　　　　　　　　　　Hon. Walter Shapero

_____/

AMANDA LYNNE JACKSON,

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　Adv. Pro. No. 09-05593

SALLIE MAE,

　　　　Defendant.

_____/

### OPINION GRANTING PLAINTIFF PARTIAL DISCHARGE OF STUDENT LOAN DEBT PURSUANT TO 11 U.S.C. § 523(a)(8)

　　　　This matter came before the Court upon Plaintiff's Complaint seeking discharge of her student loan debt as an "undue hardship" pursuant to § 523(a)(8). The Court conducted a trial and the parties submitted post-trial briefs. Thereafter, the Court took the matter under advisement.

### I.

　　　　The Plaintiff, Amanda Jackson, graduated high school in 2002. Upon graduation, Jackson worked in retail for several years before deciding to attend college. She looked at a number of schools and decided to attend Brooks College in Long Beach, California based on (1) its graphic arts program, and (2) its accelerated academic calendar which would allow her to complete an associates degree in 18 months. Jackson graduated that college with a 3.79 grade point average in June of 2005.

Upon graduation, Jackson returned to Detroit. Despite her best efforts, she was unable to find employment in her field - graphic arts – with potential employers telling her that she was not properly educated for such a position. She reached out to the career placement services at Brooks College for their assistance in securing employment, but they were not any help.[1]

After failing to secure a position working in graphic arts, Jackson enrolled in classes at the National Institute of Technology in Dearborn, Michigan and earned certification in massage therapy. To finance her educations at Brooks College and National Institute of Technology, Jackson obtained four loans from Sallie Mae. At the time of trial, the loans, with interest, fees and charges, totaled $99,252.21. Her monthly payment on the loans is roughly $800.

Jackson is twenty-six years of age, single, and has no dependents. She has been unemployed since March of 2010 and currently lives on unemployment benefits of $725 per month. As a result of her recent unemployment, Jackson's monthly expenses have been significantly reduced from what they were at the time of her bankruptcy filing as reflected in Schedule J. Specifically, her monthly food expenses have been reduced from $400 to $200; her monthly clothing expenses have been reduced from $200 to $0 (which she attributed to the lack of present necessity of maintaining a wardrobe of work clothes); her monthly transportation expenses have been reduced from $200 to $100 since she no longer has a commute to work. Jackson's housing expense is $400 per month and results from an arrangement she has with her father which appears to be of a "rent to own" or "disguised lease" nature.[2] She currently budgets no amount for property insurance or home maintenance. The above amounts, combined with the continued monthly expenses for electricity and heating fuel ($100); water and sewer ($50); telephone ($75); medical and dental expenses ($300); and auto insurance ($100); result in total monthly expenses of roughly $1325.

---

1 Brooks College was owned by Career Educational Corporation, American Intercontinental University, Inc. Brooks College is now closed, following a class action lawsuit against its owner Career Educational Corporation. The suit was among three class action suits against Career Educational Corporation that alleged students were misled regarding post-graduation employment prospects and salaries, retention and graduation rates, the transferability of credits earned, the competitive nature of the admissions process, the quality of the education offered at each school, the reputation of the schools, financial aid, and the quality of career services offered at the school. Jackson was a class member and joined the suit. Career Education Corporation denied the allegations and the suit was settled in January, 2008 for $12,250,000. Jackson's portion of the settlement was $2,750.

[2] In 2009, Jackson's father purchased the home for $3,500 and spent a further $10,000 in making improvements to it. There is an oral agreement between them that Jackson will pay "rent" in the amount of $400 monthly until she has paid him a total of $13,500, at which point he will deed the house to her.

Prior to her recent unemployment, Jackson worked in a number of positions, most of which involved customer service. In her most recent position, she worked at a telephone call center earning $13.24 per hour. Prior to that, she had worked as a manager of a spa earning $10 per hour, and before that, as a service representative at Verizon Wireless where she earned $14.46 per hour. Her only employment tangentially related to her studies at either Brooks College or National Institute of Technology was her management position at the spa, which provided massage services. She was forced to leave that position however due to the spa's failure to pay her.

Unable to make payments toward her relatively massive student loan debt load, Jackson contacted the lender to try and work out some type of payment arrangement. This resulted in three different forbearances, for which Jackson paid $150 each. Other than the $450 in forbearance related fees, Jackson has made no payment towards the student loans. Feeling the pressure of mounting debt, Jackson sought the counsel of GreenPath Debt Solutions. GreenPath helped Jackson formulate a repayment plan through which she successfully paid off two charge accounts, but she was unable, given her income, to ascertain a viable course through which to repay her student loans, and she filed her voluntary chapter 7 petition.

## **II.**

Pursuant to § 523(a)(8), student loan debts are excepted from discharge unless to do so would impose an undue hardship on the debtor and the debtor's dependants. 11 U.S.C. § 523. The Bankruptcy Code does not provide a definition of "undue hardship," leaving the courts to do so. The standard used in the Sixth Circuit is the *Brunner* test, *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir. 2005), under which, to establish "undue hardship" a debtor must make a three-part showing:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. N.Y. 1987). The debtor must make this showing by a preponderance of the evidence. *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 359 (6th Cir. 2007).

a. Can the debtor maintain, based on current income and expenses, a "minimal" standard if forced to repay the student loan debt?

In examining whether the Debtor can maintain a minimal standard of living if forced to repay the loans, the Court must determine whether she is (1) actively minimizing her living expenses and (2) maximizing her income potential. *See Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 394 (E.D. Mich. 1993). Debtor is not required to live in abject poverty, but she must make lifestyle adjustments, if necessary, to minimize expenses and maximize income. *See Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 438 (6th Cir. 1998).

   *i. Expenses*

The Court is well satisfied that Jackson has minimized her expenses as much as can be expected, and then some. In fact, it is almost beyond doubt that her expenses will need to *increase* in the future if she is to maintain a "minimal" standard of living. There is currently no expense provision for home maintenance, an outlay that is a fact of life for every homeowner. While no evidence was produced regarding the physical condition of her home, it is indisputable that in the future there will be *some* necessary expense incurred to keep the house in habitable condition. Moreover, property insurance would be something this Court would consider to be part of a "minimal" standard of living and it is not currently included as an expense. Additionally, Jackson's current food ($200 per month) and clothing ($0 per month) are unsustainably low and will need to rise eventually. Also, Jackson's transportation expense is currently at a reduced level of $100 per month because she doesn't have a work commute; when she obtains employment the expense will presumably rise. The Court further notes the absence of discretionary expenses such as cable television and internet. In sum, the Court concludes that Debtor's expenses are unable of further decrease while maintaining a minimal standard of living.

*ii. Income*

"To satisfy this condition the debtor must demonstrate that she '. . . is making a strenuous effort to maximize her personal income within the practical limitations of her vocational profile.'" *In re Healey*, 161 B.R. at 394 (citations omitted). The evidence adduced at trial indicates that Jackson is making every effort to maximize her income. She first sought employment within her chosen field, graphic design, but was unable to secure employment because, according to potential employers with which she spoke, she lacked the appropriate education. Thereafter, she sought employment in the field she knew – customer service – working for Digital Dialogue and then Verizon Wireless. After completing her Massage Therapy Certificate, she briefly took employment in that field, at a reduced hourly wage (presuming there was opportunity for advancement), but had to leave that position after the employer failed to make payroll and she again returned to customer service. Based on the evidence, it is clear to this Court that employment in a services related field is Jackson's best opportunity to maximize her income. While she is presently unemployed, she is looking for work and will likely secure such in the near future. Based on Jackson's pay history, it would be reasonable to assume that her future employment, at least initially, will yield compensation in the range of $10 - $15 per hour.

b. Is the current state of affairs likely to persist for a significant portion of the repayment period?

It appears from Exhibit D that the repayment term for the student loans is 180 months. The question then is, over the next 15 years, are Jackson's income and expenses likely to allow her to make payments towards the debt while maintaining a "minimal" standard of living?

The Court found Jackson's testimony regarding her inability to find work in her chosen field – graphic arts – to be credible. The Court also found credible Jackson's testimony that the degree she obtained from Brooks College is of little value in securing employment, saying specifically that she went on several interviews and was told she wasn't qualified. It thus appears to the Court that Jackson's future employment prospects are most likely in the customer service arena, the area which comprises most of her past experience. Assuming she secures a new position in this field, it would not be unreasonable to assume that her pay will increase gradually with time.

Nor is it unreasonable to assume that her expenses, generally speaking, will increase in time as a result of inflation. The only present expense which will decrease in the foreseeable future is the $400 per month "rent" payment for her home, which will cease when she has made a total of $13,500 in payments, which should be sometime around September 2012.[3] As discussed in the preceding section however, given Debtor's unbudgeted but reasonably foreseeable future expenses (home maintenance and property insurance) and budgeted expenses that will increase when Debtor secures employment (transportation and clothing expenditures), the Court is quite sure that, absent a material unforeseen change, the $400 per month currently being paid to her father will be largely consumed by other expenses necessary to a minimal standard of living.[4]

c. Has the debtor made a good faith effort to repay the loans?

In considering whether a debtor has a made a good faith attempt at repayment, courts look to payments that the debtor has made as well as other actions the debtor has taken in regards to the loan. Good faith has been found lacking where debtors have sought to discharge loans for which they did not seek a deferment, *Brunner*, 831 F.2d at 397; or for loans which they failed to make any payments towards and failed to attempt to negotiate a payment arrangement for prior to filing bankruptcy. *In re Healey*, 161 B.R. at 397.

In this case, the Debtor has not made any principal payments on the student loan debt. She has, however, sought forbearance on the debt and paid a total of $450 to receive same. This is not a Debtor who simply ignored her obligation; instead, she sought to find a way to avoid defaulting on the obligation, even if that just meant buying more time via forbearance. In this Court's view, this good faith effort at repayment requirement is bound up with, and related to, a debtor's ability to have done so, or to do so, given her financial circumstances, present and anticipated.

---

[3] At the trial, held April 12, 2010, Jackson testified that she had made 6 months of rent payments to that point. Assuming then that the payments commenced in November 2009, and that her father is not charging interest, the payments should complete approximately 34 months later, September 2012.
[4] Another expense not specifically argues by either party, but nonetheless foreseeable, is a vehicle expense. Jackson owns her current vehicle outright; presumably the vehicle will require repair or replacement at some point over the next 15 years.

Sallie Mae points to several different purchases by Debtor and argues that they indicate lack of good faith in attempting repayment. These include $600 spent on a trip to California in 2009 and a stop at the American Safari Wildlife in Ohio that same year. Debtor testified that the trip to California was to be a maid of honor in her good friend's wedding, and the visit to the American Safari Wildlife was with her grandfather and aunt when they were on their way to her grandfather's medical appointment at a clinic in Ohio. Sallie Mae also points out in its post-trial brief that Debtor pays $12 per month for a gym membership, $30 for match.com (which is apparently for Debtor's aunt who herself lacks a credit or debit card and repays Debtor each month), and has several other small charges over the last year at a nail salon, a miniature golf course, and Blockbuster Video. Sallie Mae also points out that Debtor did not use her $2,750 payment from the Brooks College class action settlement, or her 2008 tax refund of $551, to make any payment toward the student loan debt. Debtor testified that she used these funds to pay bills and everyday expenses.

Sallie Mae also argues in its brief that Debtor's monthly payment of $400 to her father for her house is a payment of a pre-petition, unsecured debt subject to the discharge and that she "nevertheless chooses to repay this discharged debt, while seeking to discharge her student loans in this adversary proceeding." (Def. Brief, p. 3). This contention is perplexing given that Debtor's arrangement with her father, whether characterized as a loan, lease or otherwise, can hardly be called unsecured. The title to the home is in her father's name. He will not transfer the title until she completes payments. It is difficult for a creditor to be more secured than that. While Debtor can walk away from the obligation on the basis that whatever duties she owes were subject to the discharge, the property does not go with her. She testified that if she wants to stay in the house, she has to make the monthly payments. The premise of Sallie Mae's argument on this point appears quite faulty.

Viewing the expenditures highlighted by Sallie Mae both individually and cumulatively, the Court does not find that they are indicative of a lack of good faith effort to repay the student loan debt. Debtor's use of her settlement and tax refund for items other than repayment of her loans should not fairly be considered indicators of something less than good faith because (a) there is no indication that the funds were spent on any non-necessary expenses, and (b) the student loan debt was in forbearance at the time. Based on the totality of the circumstances, the

- 7 -
09-05593-wsd    Doc 27    Filed 08/16/10    Entered 08/16/10 08:22:04    Page 7 of 9

Court concludes that Debtor has made a good faith effort to comply with her student loan obligations.

## III.

Viewing the circumstances of this case in light of the *Brunner* factors, the Court thus concludes that it would be an undue hardship for Debtor to make any repayment on the student loans at this time.

In this legal area, it is not an all or nothing proposition, however, and bankruptcy courts have the power to fashion an equitable remedy short of discharging a debtor's entire education loan. *In re Hornsby*, 144 F.3d at 440. In this matter, the Court believes that Debtor will be able to make a partial repayment commencing when she completes the $400 monthly "rent" payments to her father. While it is difficult looking several years into the future to determine what Debtor will be able to pay more than two years into the future, the Court is comfortable that Debtor's past income and expenses have been consistent enough as to enable a reasonable projection on the issue. While the $400 housing expense will discontinue in the latter part of 2012, other expenses such as home maintenance, transportation, etc. will likely take the place of a good portion of that monthly payment. Therefore, the Court finds that Debtor will be able to afford to pay $100 per month toward the student loan debt commencing in December 20, 2012 without suffering undue hardship. (Should the Debtor, at that time, find the $100 per month payment an undue hardship, she may seek to have the bankruptcy case reopened for a further review). Such payments shall continue for the remaining 132 months of the 180 month repayment term.[5] All amounts in excess of $13,200, whether in the nature of principal, interest, penalties, fees, or otherwise, shall be subject to the general discharge. The partial payments shall be applied pro rata among the four different educational loans, absent some other agreement by the holders of same.

The Court will enter an appropriate order.

.

---

[5] According to the account information contained in Defendant's Exhibit D, the 180 month repayment term commenced December 20, 2008. Accordingly, when Debtor begins commences partial payments on December 20, 2012, there will be 132 months remaining.

**Signed on August 16, 2010**

                                                   **\_\_\_\_ \_\_/s/ Walter Shapero\_   \_\_\_**
                                                   **Walter Shapero**
                                                   **United States Bankruptcy Judge**